Clements Buckaroos v. Commissioner.
Buckaroos v. Commissioner
Docket No. 89412.
United States Tax Court
T.C. Memo 1962-18; 1962 Tax Ct. Memo LEXIS 289; 21 T.C.M. (CCH) 83; T.C.M. (RIA) 62018; January 30, 1962
Frank C. Scott, CPA, P.O. Box 1904, Stockton, Calif., for the petitioner. William T. Ivey, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Deficiencies in income tax and additions to tax have been determined as follows: Sec. 291(a)
Sec. 6651(a)
Year
Tax
I.R.C. 1939
I.R.C. 1954
1944
$434.03
$108.51
1945
297.27
74.31
1946
583.37
145.84
1947
821.94
205.48
1948
758.12
189.53
1949
618.05
154.51
1950
192.72
48.18
1951
496.54
124.13
1952
444.05
128.04
1953
788.05
197.01
1955
229.84
$96.97
1956
386.73
96.68
*290 All of the foregoing are in controversy. The principal question is whether petitioner is an organization exempt from income tax, and if not, whether it is liable for the additions to tax for failure to file timely returns. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found. Petitioner filed corporate tax returns for the years 1955 and 1956 with the district director of internal revenue, San Francisco, California, more than 6 months after the period for filing returns provided under section 6072 of the 1954 Code. Petitioner did not file corporate tax returns for the years 1944 to 1954, inclusive. Petitioner was organized as a voluntary association under its present name in 1940 with the purpose of carrying on the functions of a "horse and trailer" riding club in the Clements, California area. Petitioner was incorporated on April 14, 1942, under the provisions of section 593 of the Civil Code (now section 9200 of the Corporation Code) - The General Nonprofit Corporation Law - of the State of California. Petitioner's articles of incorporation, which have never been amended, provide generally "[that] the purposes for which it *291 is formed are to promote horseback riding, horsemanship, good fellowship, and general entertainment of the members" thereof; that the "corporation shall have no capital stock"; that it shall have members of only one class whose qualification therefor "shall be that each member shall own a saddle horse, saddle, bridle, and equipment for transporting saddle horse, saddle and bridle, and shall reside within ten miles of the Town of Clements, California," but a waiver of the residence requirement may be effective by action of a majority of the membership. The membership of petitioner has averaged approximately 60 members each year since its incorporation. The dues paid by each member in each year have been $2.40. From the year 1942, petitioner has managed and promoted an annual 1-day (Sunday) public event in the nature of a rodeo (sometimes designated as the Clements "Stampede"), held for the pleasure of the members of the club and the entire community. That event usually includes a horse show, riding and roping contests, cutting horse and sheep dog trials, and similar events usual to rodeos. All of the entry fees of the contestants with other funds of the petitioner are used for *292 the payment of prize money for participants in the various events. There is no profit to petitioner from such fees. The work of putting on the said annual rodeos has been done from their beginning in 1942 to the present time almost entirely with the voluntary and unpaid labor of the petitioner's members, the only significant exception being the payment of fees to outside judges retained to decide the winners in the horse show and other events for which prizes or trophies are awarded. The production of the event described (the Clements "Stampede") would not at any time have been economically feasible if the work involved in it had to be hired instead of being done without pay by the petitioner's members. Since 1944, admission has been charged those attending the rodeo. The sum of 75 cents per spectator was charged in 1944, and $1.50 for spectators aged 16 and over, 75 cents for those aged 12 to 15, inclusive, with free admission for those under 12 years of age in 1945 and each succeeding year through 1958. The district director has approved petitioner's application for exemption from the admissions tax imposed by section 4231 of the 1954 Code under the exemption provisions of section *293 4233(a)(9) of the 1954 Code for the years 1955 through 1958. The activities of petitioner throughout the periods involved in this proceeding have been predominantly those involving the social and recreational interests of its members and residents of the farming community in which it is located. Losses were incurred in the years 1954 and 1958 and a return filed for the year 1959 shows a net operating loss for that year. The annual net income of petitioner for the periods involved in this petition, inclusive of losses for the years 1954 and 1958, has averaged $1,776.41 and the greatest annual amount was realized in the first post-war year of 1947 in the sum of $3,913.38. In 1944, petitioner purchased a tract of 12.49 acres of land, and in 1948, bought an adjoining 15 acres. The corrals and grandstand used in conducting the rodeo are on this property. In 1953, petitioner constructed a clubhouse on its premises. Respondent determined that petitioner was not an exempt organization and that it was liable for tax on its net income for the years 1944 through 1953, 1955 and 1956. Opinion Petitioner contends that it is an exempt corporation under section 101(9) of the 1939 *294 Code and section 501(c)(7) of the 1954 Code. Section 101(9) exempts from taxation: Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the earnings of which inures to the benefit of any private shareholder; The provisions of section 501(c)(7) are virtually identical. Section 29.101(9)-1 of Regulations 111, relating to section 101(9), is as follows: SOCIAL CLUBS. - The exemption granted by section 101(9) applies to practically all social and recreation clubs which are supported by membership fees, dues, and assessments. If a club engages in traffic * * * for profit, such club is not organized and operated exclusively for pleasure, recreation, or social purposes. * * * The statute and regulations quoted above are substantially similar to the previous and subsequent statutes and regulations. "The implication is that Congress approved of the interpretation adopted by the Commissioner." . In order to qualify as an exempt corporation under section 101(9), petitioner must show that it was organized and operated in substantial compliance with the terms of *295 that section as interpreted by the . Respondent contends that petitioner has not met this requirement. He states that by charging for the rodeo petitioner was engaging in traffic for profit. He further states that these activities resulted in net income to petitioner which inured to the benefit of its members. The rodeo was not held in order to derive a profit, but for the pleasure and recreation of both members of petitioner and of the community. Charges were made for the rodeo in order to contribute toward defraying its expenses. In the instant case, the outsiders were, in essence, reimbursing petitioner for the cost of the rodeo held for their benefit. All the activities of petitioner have been exclusively for pleasure and recreation. Cf. ; Coeur d' . Unlike the taxpayers in (C.A. 10, 1947), affirming , certiorari denied ; *296 (C.A. 2, 1940), affirming , certiorari denied ; and (C.A. 2, 1935), affirming , which are cited by respondent, petitioner has engaged in traffic with outsiders as a purely incidental part of its principal activity. The enhancement of petitioner's facilities and retirement of its indebtedness "do not constitute the profits inuring to the benefit of a private shareholder," with which sections 101(9) of the 1939 Code and 501(c)(7) of the 1954 Code are concerned. . We conclude that in the taxable years involved petitioner qualified as an exempt corporation under the relevant sections of the 1939 and 1954 Codes. It should perhaps be added that this result is founded on the operations of petitioner as they have been conducted in the past. It would, of course, be possible for the rodeo activities to become so preponderant that they could no longer be viewed as merely incidental. Cf. Decision will be entered for the petitioner.